**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Liberty Life Assurance Company of Boston; a New Hampshire corporation; K.T., a minor and heir of the Estate of Sandra Ramos; J.R. Thompson, solely in his capacity as custodial parent and next of friend of K.T.,<br><br>Plaintiffs,<br><br>vs.<br><br>Devon Ramos, individually and as personal representative of the Estate of Gilbert Ramos; Maria Gonzalez; Christopher Dunagan; Marivel Ramos,<br><br>Defendants. | No. CV-11-156-PHX-LOA<br><br>**ORDER** |

This matter arises on Plaintiff Liberty Life Assurance Company's ("Liberty Life") Revised Motion for Dismissal and Discharge of, and for an Award of Attorney's Fees and Costs to, Liberty Life, filed on December 21, 2011. (Doc. 52) Because Liberty Life has deposited the entire amount of its life insurance policy with the Clerk of Court in this consolidated interpleader action, Liberty Life seeks an order (1) reimbursing its attorneys' fees ($13,405.00) and costs ($615.80) incurred herein, for a total award of $14,020.80, pursuant to Ninth Circuit authority; (2) discharging Liberty Life with prejudice from further liability under its policy; and (3) dismissing it from this action. Liberty Life represents that "no [p]arty disputes that Liberty Life is a disinterested stakeholder . . . [and] [c]ounsel for

1 Liberty Life affirms that he has consulted with [c]ounsel for all other [p]arties regarding the
2 relief requested herein, and that no [p]arty objects to any of the requested relief[,]" citing the
3 affidavit of Liberty Life's attorney. (*Id*. at 2)

4 **I. Background**

5 On or about September 21, 2010, Gilbert Ramos died from a self-inflicted gunshot
6 wound to the head after he shot and killed his wife, Sandra Ramos, and their two minor
7 children. At the time of his death, he was married to Sandra Ramos with whom he had two
8 children and was employed by AMF Bowling Worldwide, Inc. ("AMF Bowling"). The
9 children reportedly died at the scene and Sandra Ramos died from her injuries on September
10 23, 2010. Fortunately, Sandra Ramos' biological daughter, K.T., a minor from a prior
11 marriage to J.R. Thompson, was not present at the time of the shooting.

12 AMF Bowling maintained a 401(k) Retirement Plan for the benefit of its eligible
13 employees, including Gilbert Ramos, whose account balance on December 30, 2010 was
14 $77,158.84. (*Id.*, ¶ 14)  Gilbert Ramos purportedly failed to designate a beneficiary for his
15 401(k) plan. (Doc. 19 at 6 in CV-11-554-PHX-LOA)  Prior to the consolidation of this case
16 with CV-11-554-PHX-LO, *AMF Bowling Worldwide, Inc., v. Estate of Gilbert Ramos,* the
17 assigned district judge granted AMF Bowling's Motion to Interplead Funds and for
18 Discharge of Liability; granted AMF Bowling leave to deposit into the registry of the District
19 Court of Arizona the balance of Gilbert Ramos' 401(k) plan and accrued interest
20 ($62,113.70), after deducting its fees and costs; awarded to AMF Bowling its attorneys' fees
21 and costs in the sum of $10,610.00; dismissed with prejudice AMF Bowling from the action
22 upon deposit of the interpled monies; and enjoined all defendants, successors and assigns
23 from instituting any action against AMF Bowling for the recovery of any amounts that were
24 the subject of the interpleader action. (Docs. 25-26 in CV-11-156-PHX-LOA)

25 At the time of his suicide, Gilbert Ramos was insured by Liberty Life under a
26 renewable and convertible term life insurance policy in the amount of $100,000.00, Policy
27 No. NF3-39621478. (Doc. 1, ¶ 17 in CV-11-554-PHX-LOA) Gilbert Ramos had designated
28 Marivel Ramos, his mother, as the primary beneficiary and Maria Gonzalez, his sister, as the

1  contingent beneficiary. (*Id.*, ¶¶ 4-5, 18) After disputes arose over the entitlement of Gilbert
2  Ramos' life insurance proceeds, Liberty Life filed an interpleader action on March 24, 2011,
3  pursuant to Rule 22, Fed.R.Civ.P., and 28 U.S.C. § 2201, alleging it was "an innocent
4  stakeholder that faces the threat of duplicative litigation and inconsistent liabilities regarding
5  the Proceeds because of the conflicting claims of the Defendants and, accordingly, it cannot
6  safely pay the Proceeds to any of the adverse claimants." (*Id.*, ¶ 27)  On July 25, 2011,
7  Liberty Life deposited the amount of $102,943.12, the principal amount of Gilbert Ramos'
8  life insurance policy plus $2,943.12 in accrued interest, into this District Court's registry.
9  (Doc. 18)

10 **II. Jurisdiction**

11  "[F]ederal Rule of Civil Procedure 22 permits interpleader actions if the amount in
12 controversy exceeds $75,000.00 and if there is complete diversity between the stakeholder
13 and all of the claimants, even if some of the claimants are citizens of the same state."
14 *Prudential Ins. Co. of Am. v. Wells*, 2009 WL 1457676, * 1 (N.D.Cal. May 21, 2009) (citing
15 *Franceskin v. Credit Swisse*, 214 F.3d 253, 259 (2d Cir. 2000)). "Rule 22(1) provides a
16 procedural framework for interpleader actions, but it does not confer subject matter
17 jurisdiction on federal courts." *Metropolitan Life Insurance Co. v. Marsh*, 119 F.3d 415, 418
18 (6th Cir. 1997) (citing Fed.R.Civ.P. 82; *Commercial Nat'l Bank of Chicago v. Demos*, 18
19 F.3d 485, 488 (7th Cir. 1994)). Under a Rule 22 interpleader, the action must be based on a
20 statutory grant of jurisdiction, such as, 28 U.S.C. §§ 1331, 1332. *Gelfgren v. Republic Nat'l*
21 *Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982) ("[U]nlike statutory interpleader, 28 U.S.C. §
22 1335, in which jurisdiction is based solely on diversity of citizenship, jurisdiction in
23 interpleader under [R]ule 22[a](1) can be based on a claim arising under federal question
24 jurisdiction . . . As this case was removed to federal court under ERISA, 29 U.S.C. §
25 1132(a)(1)(B), federal question jurisdiction, and thus jurisdiction for [R]ule 22[a](1)
26 interpleader, exists.") (citations and footnote omitted)). As Liberty Life correctly notes, the
27 Court has already determined that it has jurisdiction over Liberty Life's action, pursuant to
28 Rule 22, Fed.R.Civ.P., and 28 U.S.C. § 1332, "because there is complete diversity between

- 3 -

1 Liberty Life, as the stakeholder, and all defendants, and the amount in controversy exceeds
2 $75,000.00."[1] (Docs. 36 at 2; 52 at 3)

After the cases were consolidated, all parties consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c) and Rule 73, Fed.R.Civ.P., with the written approval of the formerly assigned Judge, the Hon. Roslyn O. Silver, Chief United States District Judge. (Docs. 29 in CV-11-156-PHX-LOA; 28 in CV-11-554-PHX-LOA)

**III. Interpleader Actions**

**A. Generally**

"Interpleader's primary purpose is not to compensate, but rather to protect stakeholders from multiple liability as well as from the expense of multiple litigation." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1034 (9th Cir. 2000). Interpleader is appropriate even where there is only a possibility of adverse claims to a fund. *Minnesota Mutual Life Ins. Co. v. Ensley*, 174 F.3d 977, 981 (9th Cir. 1999). Interpleader is a remedial device to be liberally construed. *State Farm & Casualty Co v. Tashire*, 386 U.S. 523, 533 (1967). "Moreover, the right to interpleader is not incumbent upon a stakeholder showing that it is in jeopardy of multiple liability, as well as multiple litigation. Instead, [a] stakeholder, acting in good faith, may maintain a suit in interpleader to avoid the vexation and expense of resisting adverse claims, even though he believes only one of them is meritorious." *First Interstate Bank, N.A. v. U.S. By & Though I.R.S.*, 891 F.Supp. 543, 547 (D.Or. 1995) (citations and internal quotation marks omitted).

"There are two steps to an interpleader action. The first is determining whether the requirements of interpleader have been met." *Hartford Life Ins. Co. v. Banks*, 2011 WL 3609396, * 5 (S.D.Cal. August 15, 2011) (citation omitted). "The second step is to 'adjudicat[e] the adverse claims of the defendant claimants.'" *Id*. (quoting *Western Conf. of Teamsters Pension Plan v. Jennings, Case No. C–10–03629 EDL*, 2011 WL 2609858 at *

---

[1] Anticipating Liberty Life would be dismissed prior to trial, the parties were realigned on October 28, 2011, to reflect the claimants' adverse interests in the balance of Gilbert Ramos' life insurance proceeds. (Doc. 36 at 8-9)

5 (N.D.Cal. June 6, 2011) (citing *N.Y. Life Ins. Co. v. Connecticut Development Authority*, 700 F.2d 91, 95 (2nd Cir. 1983) ("Normally an interpleader action is concluded in two stages, the first determining that the requirements of [federal jurisdiction] are met and relieving the plaintiff stakeholder from liability, and the second adjudicating the adverse claims of the defendant claimants; this bifurcation is not mandatory, however, and the entire action may be disposed of at one time."). "Discharge [of an interpleader] is normally granted absent bad faith by the stakeholder." *Jennings*, 2011 WL 2609858 at * 5 (citing *New York Life Ins.*, 700 F.2d at 96). A district court may delay or deny discharge of the stakeholder if there are "serious charges that the stakeholder commenced the action in bad faith." *Mendez v. Teachers Ins. & Annuity Assoc.*, 982 F.2d 783, 788 (2nd Cir. 1992).

It is undisputed that Liberty Life has deposited the full amount of Gilbert Ramos' life insurance proceeds with the District Court. None of the parties has challenged the fact that Liberty Life is a disinterested stakeholder nor asserted any claims against Liberty Life. As a disinterested stakeholder, Liberty Life has fulfilled its obligations under its life insurance policy. Because Liberty Life faces competing claims to Gilbert Ramos' life insurance proceeds that might expose it to multiple liability or litigation which would result in Liberty Life incurring significant attorneys' fees and because Liberty Life has instituted this interpleader action in good faith to resolve the competing claims, it is entitled to be discharged from liability. *First Interstate Bank,* 891 F.Supp. at 547.

**B. Attorney's Fees**

Courts generally have discretion to award attorneys' fees to a disinterested stakeholder in an interpleader action. *Abex Corp. v. Ski's Enterprises, Inc.*, 748 F.2d 513, 516 (9th Cir. 1984). "The Ninth Circuit has recognized that a plaintiff 'in an action in the nature of interpleader . . . should be awarded attorney fees for the services of his attorneys in interpleading.'" *Standard Ins. Co. v. Nelson*, 2007 WL 1453099, * 2 (W.D.Wash. May 17, 2007) (quoting *Schirmer Stevedoring Co., Ltd. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962)). "As a general matter, a court will award fees from the proceeds whenever: '(1) the party seeking fees is a disinterested stakeholder; (2) who had conceded

- 5 -

liability; (3) has deposited the funds into court; and (4) has sought a discharge from liability.'" *Wells Fargo Bank, Nat. Ass'n v. PACCAR Financial Corp.*, 2009 WL 211386, E.D.Cal. January 28, 2009) (quoting *Septembertide Publ'g v. Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989)). Fees and costs, however, may be denied where the stakeholder has not been dilatory or is otherwise guilty of bad faith. *Gelfgren*, 680 F.2d at 81 (trial court did not err in refusing to award costs against insurance company that interpleader of life insurance proceeds where competing claims existed); *Indemnity Ins. Co. of North America v. Robinson*, 1991 WL 173115, * 8 (S.D.N.Y. August 28, 1991) (citing *Gould, Inc. v. Pension Ben. Guaranty Corp.*, 589 F.Supp. 164, 168 (S.D.N.Y. 1984) (court may deny costs if stakeholder responsible for undue delay in filing interpleader)). Further, if there is a contest between the interpleader and the interpleaded parties, either as to the correctness of the amount deposited or an interest of the interpleader in the fund, a district court may not, in the absence of special circumstances, award the interpleader its attorney's fees for the services of its attorneys in connection with such contest. *Schirmer Stevedoring*, 306 F.2d at 194.

"Although equity is the touchstone of the analysis, the Ninth Circuit views interpleading as a boon to the claimants and has stated that 'the proper rule' is to award attorney's fees." *Michelman v. Lincoln Nat. Life Ins. Co.*, 2011 WL 1376266, * 2 (W.D.Wash. April 11, 2011) (citing *Schirmer Stevedoring*, 306 F.2d at 194). However, the "test for determining attorneys' fees in an interpleader action is less rigorous than the more elaborate factors used to consider fee awards in . . . other contexts. . . ." *Won v. England*, 2010 WL 597113, * 7 (D.Haw. February 18, 2010) (citations and internal quotation marks omitted). Several considerations justify awarding a stakeholder its attorneys' fees from the interpleader fund:

> It is thought appropriate to award counsel fees to [a disinterested] stakeholder because the retention of counsel has in all likelihood been necessitated not because of the stakeholder's wrongdoing but rather because [it] is the mutual target in a dispute which is not of his own making. Moreover, the stakeholder is often viewed as having performed a service to the claimants by initiating a proceeding which will expeditiously resolve their claim and by safeguarding the disputed fund by deposit in court, which at the same time guarantees the prevailing claimant immediate

- 6 -

satisfaction without the need for execution proceedings.

*Jennings*, 2011 WL 2609858 at * 6 (quoting 3A Moore's Federal Practice, at 22–171, 22–173).

Clearly, a district court has discretion to award a stakeholder its attorneys' fees and costs in an interpleader action "when it is fair and equitable to do so." *Island Title Corp. v. Bundy*, 488 F.Supp.2d 1084, 1093-94 (D.Haw. 2007) (citing *Gelfgren*, 680 F.2d at 81); *Trustees of Directors Guild of America Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000) (affirming district court's award of $3,000.00 in fees when the stakeholder requested $97,000.00 - "[a]ttorneys' fee awards are properly limited to those fees that are incurred in filing the action and pursuing the [interpleader's] release from liability, not in litigating the merits of the adverse claimants' positions."); *Metropolitan Life Ins. Co. v. Billini*, 2007 WL 4209405 (E.D.Cal. November 27, 2007) (awarding interpleader $2,700.00 in fees and costs from decedent's $46,000.00 life insurance policy where interpleader requested $8,717.82 in fees and costs). "In an interpleader action, the broad rule [for attorneys' fees] is reasonableness." *Prudential Ins. Co. of Am. v. Estate of Norva*, 2009 WL 5126340, at * 3 (D.Haw. Dec. 28, 2009). However, the amount of attorneys' fees awarded to the disinterested interpleader are "typically modest." *Schreffler v. Metropolitan Life Ins. Co.*, 2006 WL 1127096, * 6 (D.Ariz. April 25, 2006) (citing *Schirmer Stevedoring*, 306 F.2d at 194-95 (remanding for reduction of fee award of $5,000 from $48,000 interpled fund). "[T]here is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Id.* (quoting *Tise*, 234 F.3d at 427).

Based on the evidence before the Court, Liberty Life has met all the criteria for an award of its attorneys' fees and costs. There is no argument or evidence that Liberty Life has an interest in Gilbert Ramos' life insurance proceeds or that this case was unnecessarily prolonged due to Liberty Life's wrongdoing or actions. Liberty Life initiated this interpleader action; acknowledged in its Complaint that it "stands ready to pay [Gilbert Ramos' life

- 7 -

1  insurance p]roceeds into the Court as directed by the Court[,]" doc. 1, ¶ 2 in CV-11-556-
2  PHX-LOA; participated in mandatory pretrial conferences; and filed initial disclosures and
3  answered discovery submitted by K.T. and J.R. Thompson, docs. 26; 52-1, ¶¶ 19, 21. The
4  claimants have not provided any reason, and the Court discerns none, why the Court should
5  not exercise its discretion to award Liberty Life its requested attorneys' fees and costs. The
6  Court finds that an award of Liberty Life attorneys' fees is warranted in this action. The
7  remaining question is the amount of fees and costs to which Liberty Life is entitled.

8        Liberty Life has met all of the criteria for an award of its reasonable and modest
9  attorneys' fees and costs from the deposited life insurance proceeds. Liberty Life requests
10 $13,405.00 in fees and $615.80 in costs for a total award of $14,020.80 from December 21,
11 2010 through November 30, 2011. (Docs. 52 at 7, 9; 52-2, Exhibit A at 4)  Liberty Life
12 actually incurred $21,031.50 in attorneys' fees in this action through November 30, 2011,
13 $7,626.50 more than what it seeks for reimbursement. (Doc. 52-1, ¶ 11 at 4)  Additionally,
14 Liberty Life's attorneys and paralegals reduced their customary fees to "discounted rates"
15 as follows: work by partners was billed at $275.00 per hour, by associates at $230.00 per
16 hour, and by paralegals at $100.00 per hour. (Doc. 52-1, ¶ 9 at 8)  The Court has reviewed
17 the work performed by Liberty Life's counsel and paralegals and concludes that all the work
18 reflected in the invoices was reasonably expended in preparing and maintaining this
19 interpleader action. Liberty Life has not engaged in, nor charged any fees for, advocacy on
20 behalf of any of the adverse claimants or for litigation of issues unrelated to reasonably
21 effectuating the interpleader of Gilbert Ramos' life insurance proceeds.

22       "Compensable expenses include, for example, preparing the complaint, obtaining
23 service of process on the claimants to the fund, and preparing an order discharging the
24 plaintiff from liability and dismissing it from the action." *Tise*, 234 F.3d at 426-27.  These
25 itemized costs are examples of appropriate costs that may be awarded to a stakeholder, not
26 exclusive ones. Liberty Life requests $615.80 in costs incurred in this litigation. These
27 expenses consist of: (1) the filing fee of $350.00, (2) $134.00 for service of the Summons and
28 Complaint upon Maria Gonzalez, (3) $66.80 for service of the Summons and Complaint upon

1  Marivel Ramos, (4) and a $50.00 *pro hac vice* application fee for Liberty Life's lead counsel,
2  who is employed by the national law firm of Jackson Lewis LLP and working in Greenville,
3  South Carolina, and a $15.00 fee for his Certificate of Good Standing from the Supreme
4  Court of South Carolina in support of his *pro hac vice* application. (Doc. 52-1, ¶¶ 2, 12)

5  Here, considering the experience of Liberty Life's counsel, the hourly rates charged
6  for counsel and paralegals and the time they spent working on this interpleader action are
7  reasonable. Further, except for the $65.00 Liberty Life's South Carolina counsel incurred to
8  be admitted *pro hac vice* in the District of Arizona, the costs incurred by Liberty Life are
9  reasonable. Liberty Life has provided no authority, and the Court's independent research has
10 discovered none, authorizing the reimbursement of *pro hac vice* costs as a cost in an
11 interpleader action. Moreover, no explanation is given why Liberty Life needed its South
12 Carolina attorney to participate in this non-complex interpleader action, rather than using
13 Jackson Lewis' qualified local counsel. *Pro hac vice* costs are not specifically identified as
14 a cost which may be taxed or awarded under 28 U.S.C. § 1920, Rule 54(d0(1), Fed.R.Civ.P.,
15 or LRCiv 54.1(e). *See*, *Competitive Technologies v. Fujitsu Ltd.*, 2006 WL 6338914, * 3-4
16 (N.D.Cal. August 23, 2006) ("There is a split of authority over whether *pro hac vice* fees
17 may be recovered as taxable costs." (citations omitted). Request for *pro hac vice* costs
18 denied). The Court will deny Liberty Life's request for its *pro hac vice* costs ($65.00) but
19 will award Liberty Life all its fees and other costs in the amount of $13,955.80.

20 **IV. Conclusion**

21 The Court will grant Liberty Life's Revised Motion for Dismissal and Discharge, doc.
22 52, and will award its attorneys' fees and costs in the amount of $13,955.80.

23 Based on the foregoing,

24 **IT IS ORDERED** that Liberty Life's Revised Motion for Dismissal and Discharge
25 of, and for an Award of Attorney's Fees and Costs to, Liberty Life, doc. 52, is **GRANTED**.
26 Plaintiff Liberty Life is hereby dismissed with prejudice from this action and is fully
27 discharged from any further obligation and liability to any person, whether a party herein or
28 not, with respect to Gilbert Ramos' life insurance policy with Liberty Life, Policy No.

1  NF3-39621478.

2  **IT IS FURTHER ORDERED** that Liberty Life is awarded $13,955.80 for Liberty
3  Life's attorneys' fees and costs incurred herein. The Clerk of Court is kindly directed to
4  promptly pay Liberty Life the sum of $13,955.80 from the interpled funds in the District
5  Court of Arizona's registry to Liberty Life's counsel of record.

6  **IT IS FURTHER ORDERED** that counsel shall delete Liberty Life's full name in
7  the caption in all future filings in this case.

8  Dated this 3rd day of January, 2012.

*Lawrence O. Anderson*
Lawrence O. Anderson
United States Magistrate Judge